[No. 30106. Department Two. February 25, 1947.]

NATHAN KING *et al.*, *Appellants*, v. NORTHERN PACIFIC RAILROAD COMPANY *et al.*, *Respondents.*[1]

*H. E. Foster*, for appellants.

*Stuart K. Nielsen*, for respondents.

JEFFERS, J.—This action was instituted by Nathan King and Mary King, his wife, and Vero Borden, against the Northern Pacific Railroad Company, R. T. Cummings and

[1]Reported in 177 P. (2d) 714.

Laura Cummings, his wife, and Muller & Gregory, a corporation, to quiet title to section 1, township 23 north, range 8 E.W.M., King county, Washington.

The complaint alleged that plaintiffs were the owners and seized in fee simple of the above-described property; that defendants claimed some interest in the property, the nature of which was unknown to plaintiffs; and that defendants had no interest, title, or right in or to such property.

Defendants R. T. Cummings and wife, by their answer and cross-complaint, denied that plaintiffs were the owners of the property, and in paragraph two of the answer alleged that, by deed dated October 10, 1945, plaintiffs and defendants Cummings obtained title to and the right of possession of section 1 as tenants in common, an undivided one-third interest in the property being owned by R. T. Cummings and wife, one-third by Vero Borden, and one-third by Nathan King and wife, and that there had been no change in the interests of the parties.

Defendants, by way of cross-complaint, set out certain facts which they alleged made a partition of the property unfeasible, and therefore asked that it be sold. A demurrer to the cross-complaint was interposed by plaintiffs and sustained by the court. A motion to strike certain portions of paragraphs Nos. 2 and 3 of the answer was also interposed by plaintiffs. This motion was denied.

Plaintiffs, by their reply, denied the affirmative matter set out in the answer and alleged affirmatively that, on or about October 10, 1945, defendants Cummings sold all their property to plaintiffs and relinquished all claims to the enterprise hereinafter referred to, including the property described in the complaint.

Neither Northern Pacific Railroad Company nor Muller & Gregory appeared in the action, and an order of default against those defendants was entered January 22, 1946.

A hearing on the issues made by the pleadings was had before the court on April 18, 1946. At this hearing, plaintiffs offered in evidence a quitclaim deed dated October 10, 1945, wherein C. S. Atwood, trustee for liquidation of

Muller & Gregory, a corporation, organized under the laws of the state of Washington and now dissolved, was grantor, and Nathan King, R. T. Cummings, and Vero Borden were grantees. By this deed, for a stated consideration of five hundred dollars, grantor conveyed to the grantees whatever title to section 1 he had. Plaintiffs then sought by oral testimony to show facts which they contend prove that whatever right, title, or interest defendants may have had in the section by virtue of the quitclaim deed (plaintiffs' exhibit No. 1) was conveyed to them.

The trial court found that King, Borden, and Cummings acquired section 1 as tenants in common, each becoming the owner of an undivided one-third interest, the interest of King being the community interest of himself and wife, and the interest of Cummings being the community interest of himself and wife; that the ownership of these parties had not been changed; that plaintiffs had failed to prove facts which entitled them to quiet title in section 1 as to the interest of defendants Cummings. Conclusions based upon the findings were made, and a judgment of dismissal entered.

A summary of what we deem to be the material facts follows.

It is admitted by all the parties that about May, 1945, King, Borden, and Cummings entered into an oral agreement under which logging operations were to be carried on. Mr. King owned a sawmill and donkey, and he was to furnish this equipment for the purpose of carrying on the operation. Mr. Cummings was to furnish a caterpillar tractor, and Mr. Borden was to provide the timber and a truck, the timber being on land owned by Borden. The expenses of the operation were to be paid out of the general fund, that is, from the timber cut and sold, and the net profits were to be split three ways.

The trial court made no specific finding as to what the relationship of the parties was. Plaintiffs contend that this was a joint adventure. We think it immaterial whether the relationship created was that of joint adventurers or partners, in so far as this case is concerned, and plaintiffs

admit that the legal principles which they contend govern the case would be applicable to either of the relationships above mentioned.

The parties proceeded with their operations on the Borden land for some three or four months. It is not very clear just when they stopped cutting on the Borden land, but it is apparent that, for some time before October 13, 1945, differences had arisen. Cummings claimed the sawmill was not operating efficiently and that Borden would not permit them to cut timber of sufficient size to enable them to compete with other loggers. However, during their operations they did cut and sell timber to various mills.

We now desire to summarize the material facts relative to section 1. A few days after the parties had begun operations under their agreement, the attention of Mr. Cummings was called to section 1, which was not far from the Borden land. The parties went and looked at this land, and examined the timber. It was Cummings' opinion that, with proper management and efficient equipment, it would be profitable to log section 1.

According to Mr. Cummings, it was suggested by Mr. King that, as they did not know anything about titles, they employ some one who did to procure the land for them, and King stated that he had an uncle who was a lawyer, suggesting that they hire him to do this work. The lawyer suggested was Mr. H. E. Foster, who is attorney for plaintiffs in this action. Mr. Cummings stated that he objected to Mr. Foster, but he was overruled, and as a result the parties went to see Mr. Foster in July, 1945. The parties collected some money due them from the sale of timber, and paid Mr. Foster a retainer fee of one hundred dollars, or at least on this occasion they gave him that amount. According to Mr. Cummings, Mr. Foster was told that all three of the parties were going to buy the property, and Mr. Foster apparently proceeded to arrange for its purchase.

Mr. King stated that, before section 1 was acquired, it was agreed between the parties that, when a deed was obtained, a meeting would be called and they would go to Mr. Foster's

office and have an agreement drawn up, describing all their interests, rights, and privileges. It is admitted no such agreement was ever drawn up or entered into.

On the date of the execution of the quitclaim deed (October 10, 1945), all of the parties went to the Washington State Bank, at North Bend, and there all three of them signed a note in favor of the bank for $921. This note is defendants' exhibit No. 2. Of the money obtained on this note, $575 went to Mr. Foster, in the form of a check signed by all three of the parties, of which $500 was to pay for the quitclaim deed and $75 to apply on attorney's fees. Mr. Cummings testified that Mr. Foster was going to have the deed made to Mr. King, but he (Cummings) objected and insisted that the deed be made out to all three of the parties, which was done.

Mr. Cummings, sometime in the early part of 1946, paid one hundred dollars on this note. He was never asked to, and he did not personally, make any other payment on the note, and the same was finally paid by King and Borden.

Mr. King testified to the effect that it would require $2,500 or $3,000 to clear up the title to section 1; however, on cross-examination he stated that all that had been paid since the original amount of $575 were some fees to Mr. Foster and $140 in taxes.

On cross-examination, Mr. King was asked, among others, the following questions:

"Q. Just exactly how much were you going to pay for this deed? . . . A. $500.00. Q. You were going to pay $500.00 to some claimant against Muller & Gregory, that right? A. Yes. Q. And going to pay $50.00 or $75.00 to the attorney for the liquidator? A. Yes. Q. And $50.00 to him? A. Yes. Q. And going to pay taxes? A. Yes. Q. Do you know how much the taxes were? A. I don't know for sure yet."

Mr. King also stated they agreed to pay Mr. Foster five hundred dollars for his services.

Mr. Cummings stated that, while all three of the parties employed Mr. Foster to quiet title to the property, he

(Cummings) did not know that he was to be a defendant in the action until the papers were served upon him.

Apparently, the dissatisfaction existing between the parties reached a head about October 13, 1945, at which time, according to Mr. Cummings, he made the plaintiffs a proposition to the effect that he would sell his part of "everything here," as he expressed it. Mr. Borden then asked him how much he wanted, and Cummings said $2,750 —$750 for the tractor and $2,000 for his interest in section 1. Borden and King told him it would take a little while to raise the money, whereupon Cummings told them he would give them a week to raise the money.

Subsequently, Cummings went to see King, at which time, as stated by Cummings, King told him he had no interest in section 1. Cummings told King that he had documentary proof to show that he did have an interest.

A little later, Cummings sold to plaintiffs his tractor and some other equipment, and in addition, Cummings was paid about thirty-three dollars, which King said was to cover one third of the one hundred dollars originally paid to Mr. Foster.

Cummings stated he never had any settlement as to his interest in section 1. On redirect examination, Mr. King admitted that Cummings made a demand on him for two thousand dollars, but King denied it had anything to do with section 1, and stated that the demand was based upon what Cummings claimed a man and tractor were worth for four months work.

Plaintiffs testified that they had a complete settlement with Cummings on October 13th, at which time he relinquished all his rights in and to the assets of the partnership (which is what we think the relationship was); that Cummings sold to plaintiffs all his interest and right in and to the assets of the partnership, including section 1, which plaintiffs claim was a part of the assets.

Plaintiffs called a Mr. Welch, who testified that in a conversation he had with Cummings, the latter stated that

he had sold out to Borden and King, and that he was through with it.

A Mr. Boe, who was associated with Mr. Welch in the mill business, stated that Cummings told him he had sold out to Borden and King; that he had sold out "lock, stock and barrel."

Plaintiffs have appealed from the judgment hereinbefore referred to.

Appellants first contend the court erred in refusing to strike from the general denial of the answer what they term "extraneous matter" therein contained. In regard to this assignment of error, appellants state in their brief:

"The complaint alleges fee-simple title of the premises in the complaint described. The answer of the respondents deny such allegations. With the general denial, and in it, there is alleged extraneous matter, which a motion addressed thereto attempted to eliminate. The extraneous matter pleads that the respondents and the appellants are tenants in common in and to the premises so described in the complaint. If this was the only error alleged, no appeal would have been taken. While appellants have not been seriously injured by the ruling complained of, the same is not in accord with the statute. If the extraneous matter is proper, the same could appear in a proper place. A reply was tendered to the extraneous matter. This reply shows the situation, the respondent withdrawing, *selling his property* to the appellants and entering into other employment, a complete abandonment of the joint adventure." (Italics ours.)

The so-called extraneous matter above referred to consisted of a statement of respondents' interest in the property to which appellants were attempting to quiet title, claiming to be the owners in fee simple.

Rem. Rev. Stat., § 794 [P.P.C. § 24-9], provides:

"The defendant [in an action to quiet title] shall not be allowed to give in evidence any estate in himself or another in the property, or any license or right to the possession thereof, *unless the same be pleaded in his answer.* . . ." (Italics ours.)

It may be that the allegations in the answer above referred to should more properly have been set out as an

affirmative defense, but certainly they should not have been stricken from the answer. The court did not err in refusing to strike such allegations from the answer.

It is next contended that the court erred in holding that the property of joint adventurers, or copartners, could not be treated as personal property.

We do not understand from this record that the trial court held that under no circumstances could the assets of joint adventurers or copartners be considered as personal property. What the court did hold in effect was that, appellants having by their own evidence introduced the deed showing title to be vested in all three of the partners, and having further alleged a sale to appellants of respondents' interest in section 1, in order to prove their title appellants must show a written instrument of conveyance from respondents to appellants. This admittedly they did not do.

Appellants' contention relative to this assignment of error is that King, Cummings, and Borden were operating as joint adventurers, or copartners, and that all the property acquired by them while they were so operating, including section 1, became assets of the adventure, and should be treated as personal property; that, the assets being considered as personal property when, as claimed and testified to by appellants, Cummings withdrew from the operation and sold to appellants his interest in the adventure, he thereby conveyed to appellants all his right, title, and interest in such assets, including his right, title, and interest in section 1, and no written instrument or deed was necessary to convey to appellants Cummings' interest in section 1.

Appellants particularly rely on the cases of *Froiseth v. Nowlin,* 156 Wash. 314, 287 Pac. 55, and *Davis v. Alexander,* 25 Wn. (2d) 458, 171 P. (2d) 167, and state in their brief that in the *Froiseth* case this court recognized the universal rule that the assets of a joint adventure are treated as personal property.

It may be admitted that, for some purposes, the assets of joint adventurers or copartners, whether they consist of personal property or real estate, are considered as per-

sonal property. But that rule, as we shall show, does not apply under all conditions.

A careful reading of the case of *Froiseth v. Nowlin, supra,* will clearly show that the facts in the cited case to which the rule contended for was applied, are entirely different from the facts in the instant case. In the cited case, an action was brought for the dissolution of a partnership and an accounting. The opinion states that respondent Edward Froiseth and Hiram D. Nowlin, by oral agreement, entered into a partnership in the real estate business, for the purpose of buying, improving, and reselling real estate for profit. In actual practice, the title to real estate purchased was taken in the name of appellant Nowlin, partly as security for his advances and partly for convenience, and when resales were made, Nowlin's advances were first returned to him out of the proceeds, and the overplus was divided equally between the partners.

During the existence of the partnership, and apparently at the time this action was started, two pieces of real estate had been acquired which had not been resold. The trial court, on conflicting evidence, found that both of these properties were acquired for the partnership, the moneys invested being advanced by appellant under the customary agreement, and by its decree awarded respondent a one-half interest in each of the properties, subject to prompt repayment to appellants of a sum sufficient to reimburse them for one half of the advances made.

The court, in discussing the law applicable to the cited case, referred to the case of *Brewer v. Cropp,* 10 Wash. 136, 38 Pac. 866. In distinguishing the *Cropp* case, we stated:

"It also involved the purchase by one partner of the interests of the other partners. . . .

"Thus it will be seen that in that case [*Cropp* case] the partnership was of a limited or special nature confined to one particular tract of land, and there was involved the direct purchase by one partner from the others. Authorities are not wanting to sustain what was there decided."

In the *Froiseth* case, the court in discussing the different phases of this subject, quoted from 27 C. J. 220:

" 'It [the statute of frauds] applies to an oral contract to transfer or convey partnership real property, and the interest of the other partners therein, to one partner as an individual, as well as to a parol contract by one of the parties to convey certain land owned by him individually to the partnership, or to another partner.' "

We think the real distinction between the cited case and the instant case, and generally the circumstances under which real estate as between partners will be considered as personalty, is shown by the concluding paragraph of the opinion in the *Froiseth* case, from which we quote:

"Here, we have a co-partnership formed by oral agreement for the purpose of buying and selling real estate, not just one tract, but generally any and all tracts or parcels that the partners might from time to time consider available for the exercise of their merchandising abilities and efforts. Property thus purchased, though the title be taken in the name of one partner only, becomes, in equity, merchandise for re-sale and therefore, as between the parties, personal property. *The purpose is not to finally vest title in the partners according to their several interests,* but to re-sell and divide the profits." (Italics ours.)

In the instant case, it is not claimed this was an agreement relative to a resale of section 1, but to the contrary, there is evidence that the title to section 1 was to vest in the parties according to their several interests, as King testified it was agreed before the deed to section 1 was acquired that a written agreement would be drawn up, showing such interests, before any operations were commenced on section 1.

The case of *Davis v. Alexander, supra,* cited by appellants, was an action brought to establish a special partnership by oral agreement between plaintiff and defendant to purchase and sell real estate, wherein plaintiff prayed for dissolution of the partnership, for an accounting, and for recovery of his net share of the profits. In the cited case, we stated:

"In *Froiseth v. Nowlin,* 156 Wash. 314, 287 Pac. 55, which was an action for the dissolution of a partnership and an accounting, we held that an oral agreement of partners for

the purpose of buying and selling real estate, whereby lands were purchased and held in the name of one partner *for profit and resale,* is not within the statute of frauds; since the property, as between the parties, is considered as personal property. We quoted with approval 27 C. J. 220 to the effect that an oral agreement between two or more persons for joint acquisition of real property from a third person *and not contemplating any sale or conveyance between the parties* is not a contract for the sale of land within the meaning of the statute of frauds. We said:

" ' "Where land is purchased for sale and profit, it may, in equity, be regarded as personalty as among the partners." [47 C. J. 766.]' "   (Italics ours.)

It seems to us the rule contended for by appellants, as applied to the facts in the two cases last cited, is not applicable to the facts in the instant case.

Rem. Rev. Stat., § 10550 [P.P.C. § 497-1], provides:

"Every conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed:   . . ."

Rem. Rev. Stat., § 10551 [P.P.C. § 498-1], provides:

"Every deed shall be in writing, signed by the party bound thereby, and acknowledged by the party before some person authorized by this act to take acknowledgments of deeds."

In *Richardson v. Taylor Land & Livestock Co.,* 25 Wn. (2d) 518, 171 P. (2d) 703, which was an action to compel specific performance of an alleged oral contract to convey land, we stated:

"We next inquire into the element of payment. This court has uniformly held that payment of the purchase price, in whole or in part, is not of itself a sufficient part performance to remove an oral agreement for the sale of land from the operation of the statute.   [Citing cases.]"

We are of the opinion the rule announced in the early case of *Brewer v. Cropp,* 10 Wash. 136, 38 Pac. 866, is applicable here.   We quote from the opinion:

"Plaintiff's contention is that the original agreement entered into between said parties was a partnership one with respect to said real estate, and he contends that in

consequence thereof said real estate was personal property and that the alleged parol agreement whereby the same was to be conveyed to him, as aforesaid, was binding. It is conceded that the limits of said business were to be confined to the property in question and for the purpose aforesaid. . . .

"While the real estate owned by the partnership is regarded as personal property for some purposes, it is an equitable conversion only, *and the requirements of the law relating to conveyances of land must be observed in disposing of it.* [Citing authority.]

"An oral contract to convey real estate is not binding here, *Nichols v. Oppermann,* 6 Wash. 618 (34 Pac. 162), and we see no reason to exempt partnership lands from this rule. Every reason which supports such a holding as to the transfer of real estate by an individual applies with equal force to lands held by a partnership.

"The objection to the proof was well taken, and the motion for a non-suit should have been granted." (Italics ours.)

Clearly, under the pleadings in this case and the evidence introduced to support the pleadings and appellants' contentions, the rule applied in the two cases cited by appellants is not applicable here. In the instant case, appellants alleged that they were the owners in fee simple of section 1. The burden of proof was upon them to establish their title by competent evidence. They introduced as part of that proof the quitclaim deed (exhibit No. 1). This deed shows title to be in all three of the parties, namely, King, Cummings, and Borden. Appellants then attempted to show by parol an alleged sale to them of the interest acquired by Cummings.

The rule of equitable conversion, as applied to partnership assets, was not meant to, nor does it, change or affect the requirement of our statute that a conveyance of real estate or any interest therein must be by deed.

We are of the opinion such alleged sale could not be shown by parol, and that the trial court correctly found that appellants had failed to prove the allegations of their complaint, and that their action would have to be dismissed.

A good discussion of the question here involved will be

found in *Pounds v. Egbert,* 117 App. Div. 756, 102 N. Y. Supp. 1079, beginning on p. 1080. See, also, *Butts v. Cooper,* 152 Ala. 375, 44 So. 616. In that case, the opinion states:

"Appellant insists that as, in equity, the lands of a partnership held for partnership purposes are treated as personal property, the statute of frauds has no application to agreements for the purchase of an interest in a partnership consisting in part of lands. This equitable doctrine is only a principle of equity when dealing with the partnership assets, for the purpose of applying the same to the payment of the debts of the firm, and for other special purposes. It does not change the *tenure* by which the land is held, nor interfere with the principles of law in regard to the conveyance of real estate for other purposes than for the payment of the debts of the firm. The same formalities are required in the conveyance of partnership real estate as that of individuals." (Italics ours.)

We think what we have said herein answers the other assignments of error not specifically referred to in this opinion.

For the reasons assigned, the judgment of the trial court is affirmed.

MALLERY, C. J., STEINERT, ROBINSON, and HILL, JJ., concur.