[No. 30971. Department One. February 9, 1950.]

H. R. FISHER *et al., Appellants,* v. CARL FREDERICK HAGSTROM *et al., Respondents.*[1]

[1]Reported in 214 P. (2d) 654.

*Tanner, Garvin & Ashley,* for appellants.

*Leon L. Wolfstone,* for respondents.

DONWORTH, J.—This action was instituted by the plaintiff H. R. Fisher to quiet title to certain lands as against any claim of the defendants. The defendants, by their amended answer, denied plaintiff's title and interposed two affirmative defenses: (1) adverse possession for more than ten years, and (2) a common boundary established by agreement and acquiescence. The affirmative defenses being denied by the reply, the action was tried to the court sitting without a jury. During the trial, plaintiff's wife, Nettie Fisher, was by stipulation joined as a party plaintiff.

At the conclusion of the plaintiffs' case, the defendants interposed a challenge to the sufficiency of the evidence and a motion to dismiss the action. The challenge was sustained and the motion was granted by the trial court. The plaintiffs thereupon moved for a new trial. This motion was denied, and judgment of dismissal was entered in which the court fixed the common boundary line between the land owned by the parties respectively. This resulted in awarding to the defendants title to the disputed area. From this disposition of the case plaintiffs have appealed.

Respondents have moved to dismiss appellants' appeal on two grounds: first, that the transcript on appeal was not filed with the clerk of the superior court within thirty days after the appeal was taken, as provided by Rule 8 of the Rules of the Supreme Court, 18 Wn. (2d) 7-a; and secondly, that appellant Nettie Fisher did not join her husband in the execution of the appeal bond nor in the brief filed by him in this court.

■ With regard to the first ground of the motion, the requirement of Rule 8 regarding the filing of the transcript in a civil case is not jurisdictional and an appeal will not be dismissed where, as here, the transcript was ordered prior to the filing of respondents' motion to dismiss. In this case, the transcript was filed with the clerk of the superior court eight

days after the motion to dismiss was filed in this court. This is sufficient to warrant denial of the motion upon the first ground specified. *Briggs v. United Fruit & Produce,* 11 Wn. (2d) 466, 119 P. (2d) 687.

Addressing ourselves to the second ground of the motion, it appears from the record that Nettie Fisher joined with her husband in giving the notice of appeal in this case. The purpose of the appeal bond is to protect a respondent in regard to any costs that may be taxed in his favor in this court.

Rem. Rev. Stat., § 1722 [P.P.C. § 5-17], provides in part:

"The appeal bond must be executed in behalf of the appellant by one or more sufficient sureties, and shall be in a penalty of not less than two hundred dollars in any case; . . . It shall be conditioned that the appellant will pay all costs and damages that may be awarded against him on the appeal, or on the dismissal thereof, not exceeding two hundred dollars. . . ."

Rem. Rev. Stat., § 1721 [P.P.C. § 5-15], provides that an appeal shall become ineffectual for any purpose unless

" . . . an appeal bond to the adverse party conditioned for the payment of costs and damages as prescribed in section 1722, be filed with the clerk of the superior court, or money in the sum of two hundred dollars be deposited with the clerk in lieu thereof. . . ."

Since the husband is made, by the provisions of Rem. Rev. Stat., § 6892 [P.P.C. § 434-27], the statutory agent of the community, he has authority to execute an appeal bond which is a community obligation although not signed by the wife. The situation is the same as if he had executed a promissory note in the course of community business. The presumption is that a note signed by the husband alone is a community debt. *Proff v. Maley,* 14 Wn. (2d) 287, 128 P. (2d) 330, and cases cited therein.

Since the purpose of the execution of the appeal bond with sufficient surety and the filing thereof is merely to make effectual the notice of appeal already given by appellants husband and wife, we hold that the bond in this case was executed by appellant husband on behalf of both ap-

pellants (i.e., the community consisting of husband and wife) and was sufficient to make the appeal effectual as to both of them, even though not signed by appellant wife. If the appellant husband had deposited the sum of two hundred dollars of community funds with the clerk in lieu of filing the bond (which is an alternative means of making an appeal effectual under the statute, quoted above) this would have been sufficient compliance with the statute, even though done by the husband without the knowledge or consent of the wife.

We see no legal distinction between the two methods of complying with Rem. Rev. Stat., § 1721, since the object of the statutory requirement is to indemnify the respondents in respect to any costs awarded them by this court. The filing of a valid community undertaking signed by appellant husband and by the corporate surety fully complies with the provisions of §§ 1721 and 1722. Respondents are protected as to any costs they may be awarded in this court and have no ground for complaint.

Regarding the failure of counsel to include the name of appellant wife on the brief filed in behalf of appellant H. R. Fisher, this irregularity does not, in our opinion, constitute an adequate ground for dismissing the appeal as to either H. R. Fisher or his wife. The subject matter of the action being admittedly community real property and appellant wife having joined with her husband in giving notice of appeal, it seems to us that, in legal contemplation, the wife authorized her husband to present to this court on behalf of the community their arguments in opposition to the judgment of the trial court, since the interests of both appellant husband and appellant wife in this litigation are identical. For these reasons, respondents' motion to dismiss the appeal is denied.

It is proper to state that appellants were represented in the trial court and in the steps taken to perfect this appeal by counsel other than those appearing for them in this court.

Turning to the merits of this controversy, the evidence be-

fore the trial court when appellants rested their case was substantially as follows:

The property in question, a narrow strip somewhat triangular in shape, is situated on the north shore of Mercer island, which is in Lake Washington. This triangular parcel and its location with respect to the abutting parcels is illustrated by the diagram below. It is admitted that appellants

(husband and wife) are the record owners of tract A. Respondents are record owners of tract B.

The hatched area represents the land the title to which is the subject of this action. The base of the triangle (at the top of the diagram) was stated by various witnesses to be between five and twelve feet long. Apparently several surveys had been made at different times to establish the east line of tract B but they did not coincide. The sides of the triangle are approximately three hundred feet in length. There are two hedges shown in the diagram—one in the westerly part of tract A and the other parallel thereto in the westerly part of tract B.

In 1921, Magnus Roose and his wife owned tract B, and about 1922, Roose put up a fence along the east side of the triangle to pen in his geese and very shortly thereafter Mrs. Roose and her son planted a hedge along the line of the goose fence. The hedge (designated in the testimony as the easterly hedge) began a few feet from the lake and continued in a southerly direction to about the center of the westerly portion of the tract. From there the goose fence continued along approximately the same line to a point near the south boundary of the property. During this same period, Roose surveyed the line between tract A and tract B because he thought that he did not have enough ground. The result of this survey placed the boundary line about five feet west of the hedge and the goose fence at the north end thereof. However, despite the result of the survey the Rooses continued to occupy the land up to the hedge.

Respondents purchased this tract from the Rooses in 1928, at which time the hedge was fully mature and the wire fence was interwoven into the hedge as far as the hedge extended, and then the wire fence continued south to within about twenty feet of the southern boundary of the property. Soon after their purchase, respondents discovered a stake placed in the ground to the west of the east hedge and being disturbed about it questioned Mr. Roose regarding it. Mr. Roose assured respondents that the line had been surveyed and was correct and told them not to let anyone else move

them off the area west of the east hedge. Since the purchase of tract B in 1928 respondents had continuously occupied the area between the two hedges for nineteen years prior to the commencement of this action, and the undisputed evidence is that, since 1921, no one other than the Roose family and respondents (successive owners of tract B) have ever used the disputed strip. Respondents, since 1928, have always cultivated the land west of the east hedge, and up until 1946, respondents continually trimmed the hedge.

In 1939 appellants purchased and began residing on tract 1, which adjoins tract A on the east. At that time the ground was rough and was covered with heavy vegetation and trees. However, they were able to see the east hedge from their house, which was about one hundred ten feet distant from the hedge. When appellants purchased tract A in 1940, the hedge appeared to mark the dividing line between tract A and tract B. At the time of the trial, the east hedge was between three and four feet high and about three feet wide.

In 1941 appellants began to clear away some of the trees and underbrush on tract A and to cultivate a garden. They admit that respondents have maintained the east hedge and have clipped the grass up to it and that, to their knowledge, no one other than the respondents have ever occupied the disputed strip.

Appellants contend that, prior to their purchasing the property, Mrs. Hagstrom (one of the respondents) had made the statement that she thought the hedge was over too far. However, appellants did not survey tract A prior to purchasing.

In 1942 appellants sold the westerly seventy feet of tract A to Madge Hansen. Mrs. Hansen had a survey made of the property and the result of that survey showed that the hedge was not on the boundary line between tracts A and B. Previous to the time Mrs. Hansen purchased her strip of land, there had never been any sort of boundary dispute between the occupants of tract A and tract B. After the trial of an action brought by Mrs. Hansen against appellants, they reacquired the seventy-foot strip from Mrs. Hansen by quit-

claim deed in 1946 and shortly thereafter commenced this action.

The judgment and order of dismissal by which appellants' complaint was dismissed with prejudice and title to the disputed area established in respondents, contained (among others) the following recital:

"That since 1921 the defendants [respondents] and their predecessors have been in open, notorious, exclusive and adverse possession of the property described in the next succeeding paragraph:

"That since 1922 the area occupied by the defendants and their predecessors has been demarked on its easterly side by a privet hedge running in a generally northerly and southerly direction along the apparent boundary between the property of the defendants and that next adjacent thereto on the East, now owned by plaintiffs. That during said entire period of time the defendants and their predecessors have been the sole and exclusive users, occupants, and claimants of said property up to and including the easternmost edges of the hedge above described and the line thereof projected in a northerly and southerly direction to the Northeast and Southeast corners of said property. That during said entire period of time said hedge has been trimmed, cultivated, and maintained by the defendants and their predecessors and at no time since 1922 have the plaintiffs or their predecessors or ancestors in interest used, occupied, claimed, or been in possession of any of the property lying westerly of the line fixed by the easternmost portions of the hedge and said line extended to the North and South;

"That by reason of the passage of time and by reason of the continuous uninterrupted and undisputed exclusive use, possession and occupancy of all property lying Westerly of the line above described, the plaintiffs are precluded from seeking or obtaining possession thereof, regardless of whether or not said line was in fact the true and correct mathematical and geographical Easterly line of the property of the defendants, and therefore the defendants are and should be adjudged to be the sole and exclusive owners of that tract described in Paragraph II above and bound on the East by the easternmost edges of the hedge herein above described and said line projected and extended in a Northerly and Southerly direction, which rights of ownership

are to the exclusion of any right, title, claim, or interest of the plaintiffs."

The order and judgment then described the common line between the property of the parties with reference to the government survey.

■ The above quoted recital, while not in the form of a finding, must be regarded in legal effect as though it were so designated.

In *Hector v. Hector*, 51 Wash. 434, 99 Pac. 13, which was a divorce action instituted in 1909, we said:

"The respondent has moved to dismiss the appeal for the reason that no exceptions were taken to the findings of fact. In opposition to this motion the appellant contends that no findings of fact were made, but with that contention we are unable to agree. While it is true that no formal findings of fact were made, as that term is understood in law actions, yet, where a decree is entered in an equitable action finding or reciting all the material facts in the cause, *such findings or recitals have all the force and effect of formal findings in any other action* and will be accepted as true by this court, unless proper exceptions are taken. *In re Clifford*, 37 Wash. 460, 79 Pac. 1001, 107 Am. St. 819; *Poor v. Cudihee*, 37 Wash. 609, 79 Pac. 1105." (Italics ours.)

While exceptions to findings of fact are no longer required, nevertheless the weight to be accorded to such recitals as those contained in the order and judgment in this case is still as stated in the foregoing quotation.

■ Although findings of fact are not required in an equitable case and this court will try the case *de novo*, nevertheless, when findings are made by the trial court in an equitable case, this court will attach great weight to such findings.

Our decisions on this point are exhaustively reviewed in *Columbia Lbr. Co. v. Bush*, 13 Wn. (2d) 657, 126 P. (2d) 584, and their effect summarized as follows:

"The rule may be restated as follows: Findings of fact are not required in equity cases, but if they are made by the trial court they will be considered and given great weight if the statement of facts is included in the record before us.

"Equity cases are tried *de novo* in this court. In so considering the case, it is our duty to make an independent examination of all of the evidence and all of the circumstances surrounding the various parties to the action as disclosed by the statement of facts, and from that examination decide what findings should have been made.

"If the determination of the cause depends upon testimony which is in serious conflict, or upon evenly balanced evidence, this court will not disturb the findings of the trial court unless other factors are present which compel us to reach a contrary conclusion. However, if this court ascertains from the entire record that the findings are not supported by a fair preponderance of the evidence, they will be disregarded."

After a painstaking review of the evidence in this case we are convinced that it amply supports the recitals contained in the order and judgment of the trial court and we see no ground for disturbing these findings. Having adopted the trial court's findings of fact, we now consider these several questions of law presented by appellants' assignments of error.

Appellants first contend that the trial court erred in sustaining respondents' challenge to the sufficiency of the evidence after the appellant had established a *prima facie* case. As a result, appellants contend, respondents were not required to prove their affirmative defenses and appellants were not given an opportunity to present rebuttal testimony.

In an action such as this the burden of proof is upon the appellants in the first instance to establish their title to the land in dispute by competent evidence. *King v. Northern Pac. R. Co.*, 27 Wn. (2d) 250, 177 P. (2d) 714, 171 A. L. R. 190. By pretrial order it was stipulated that appellants held the record title to tract A including the disputed strip.

After proving record title to tract A, appellants did not rest upon the *prima facie* presumption favorable to their claim but produced *additional* evidence sufficient to convince the trial court that respondents had acquired the disputed area by adverse possession. The trial court, when appellants rested, sustained respondents' challenge to ap-

pellants' evidence and awarded title to the disputed area to respondents since they had had possession thereof for more than ten years adversely to appellants' claim.

Appellants' argument that the court should have required respondents to produce evidence in support of their affirmative defenses is answered by our decision in *Lambuth v. Stetson & Post Mill Co.*, 14 Wash. 187, 44 Pac. 148, wherein, in commenting upon the right of a trial court, sitting without a jury, to rule on the merits at the close of plaintiff's case, we said:

"Where the entire trial is before the court which must finally pass upon the law and facts of the case, there is no good reason why it should not be allowed to determine the facts necessary to a proper application of the law at any time during the trial. It would be worse than useless for the court, after its attention had been called to the insufficiency of the evidence offered by the plaintiff to establish the facts necessary to enable him to recover, and after being satisfied that such was the nature of the evidence introduced by the plaintiff, to require the defendant to put in evidence to disprove that which had been already sufficiently disproved.

"When the trial is before a jury, the court cannot weigh the testimony upon a motion for a non-suit for the reason that it cannot weigh it at any time; but when the trial is without a jury, the court must eventually weigh the testimony for the purpose of determining where the preponderance is, and there is no reason why it should not so weigh it at the earliest possible time when the rights of the plaintiff will not be cut off by its so doing; and when the plaintiff has introduced all of his proof and rested, no right of his will be cut off if the court then determines what has been proven. It cannot be presumed that plaintiff's case will be strengthened by the evidence put in by the defendant. If, when plaintiff had submitted his evidence, the defendant had rested without putting in any proof, it is clear that the court would have had to determine the questions of fact made by the pleadings upon a preponderance of the testimony. Hence, under the rule contended for by the appellant, the court might be put in the anomalous position of denying the motion for a non-suit and immediately thereafter, upon the refusal of the defendant to put in any proof, deciding the case in his favor."

See, also, *May v. Roberts*, 128 Wash. 538, 223 Pac. 590.

Therefore, since, at the conclusion of the appellants' case the trial court was of the opinion that the appellants had no legal title to the disputed strip but that, on the contrary, the respondents had acquired title thereto by adverse possession, it correctly sustained the respondents' motion challenging the sufficiency of the evidence and did not err in deciding the case in respondents' favor on the merits.

In *Gould v. Austin*, 52 Wash. 457, 100 Pac. 1029, this court was confronted with a similar problem. In an action to quiet title the defendant moved for a dismissal when the plaintiffs rested their case. The motion was granted and subsequently the court made findings of fact and conclusions of law which found that the plaintiffs had no title to the property by virtue of the deed under which they claimed, but that such deed was a cloud upon the defendant's title, and thereupon quieted title in the defendant. In affirming the judgment, this court said:

"In the judgment entry it is recited that the 'plaintiff's having introduced witnesses who were duly sworn and offered testimony in support of their case and having duly closed their case and rested, the defendant thereupon duly moved the court for judgment for defendant,' and the court after hearing counsel and being fully advised orders, adjudges, and decrees, etc. It is argued that this recital shows that all of the testimony introduced was in support of the appellants' case, and in itself precludes the court from entering any other judgment than a judgment of dismissal with costs to the respondent, and, hence, in itself shows that the judgment entered was erroneous. But manifestly this recital authorizes the court to enter a judgment against the appellants upon the merits of the action, absolutely barring them from maintaining another action against the respondent for the same cause of action. This the court did do, but added thereto a clause quieting title to the property in dispute in the respondent. But since the judgment on the merits was proper and bars any further right the appellants have in the property, it can make no difference to them, even though the court did add something further for the apparent benefit of the respondent. In other words, that part of the judgment quieting title in the respondent, if it be erroneous, does not operate to the prejudice of the appellants, and they cannot predicate error upon it."

■ This language is applicable here. Since the judgment entered by the trial court was on the merits, and absolutely barred appellants from bringing another action against respondents for the same cause of action, it can make no difference to appellants that the title was quieted in the respondents.

Appellants next contend that the evidence as elicited during their case in chief did not establish that the respondents had acquired title to the land by adverse possession.

■ As recently held by this court, in order to acquire land by adverse possession, it must be shown that possession is actual and uninterrupted, open and notorious, hostile and exclusive, and under a claim of right made in good faith and continuing for the statutory period. *State v. Stockdale,* 34 Wn. (2d) 857, 210 P. (2d) 686.

■ Appellants argue that there is no evidence of "hostile intent" on the part of respondents. Apparently appellants have misconstrued the legal meaning of the term "hostile intent" for, as we said in *Young v. Newbro,* 32 Wn. (2d) 141, 200 P. (2d) 975, the term "hostile" does not import enmity or ill will, but rather imports that the claimant is in possession as owner, in contradistinction to possession of real property in recognition of or subordination to the title of the true owner. See, also, *Bowden-Gazzam Co. v. Hogan,* 22 Wn. (2d) 27, 154 P. (2d) 285.

■ Appellants further contend that there is no evidence that the respondents occupied the property in dispute under "claim of right." "Claim of right" has been defined by our court in *Bowden-Gazzam Co., supra,* as follows:

"What is meant by the 'claim of right,' which, together with occupation, forms the basis for a claim of title by adverse possession, under statutes such as our limitation statute? The following quotation explains the meaning of this term, and it seems to us the explanation is both practical and the only logical meaning which could be given the term. We quote from 4 Tiffany on Real Property (3d ed.) 441, § 1147:

" 'It has been asserted, by many of the courts in this country, that in order that the statute of limitations may run in favor of one in possession of land, the possession must

be under claim of right or title. [Citing, among other cases, *Skansi v. Novak*, 84 Wash. 39, 146 Pac. 160.] There would seem to be reason to doubt, however, whether, in asserting this requirement, the courts ordinarily have in mind anything more than a restatement of the requirement of hostility of possession. They do not ordinarily undertake to explain why a claim of title on the part of the possessor is necessary, and it appears that the rightful owner is quite sufficiently protected by the requirement of adverseness or hostility of possession.'

"The Texas court, in the case of *Houston Oil Co. v. Jones*, 109 Tex. 89, 198 S. W. 290, discusses the term 'claim of right.' Texas has a statute which defines adverse possession as follows:

" ' "Adverse possession" is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another.'

"The opinion in the cited case states:

" 'The "claim of right" to which the statute refers simply means that the entry of the limitation claimant must be with the intent to claim the land as his own, to hold it for himself; and such must continue to be the nature of his possession.'

"From a reading of our own cases where adverse possession is based on the ten-year statute of limitations, we are of the opinion that this court must have given to the term 'claim of right' the same meaning accorded to it by Tiffany and the Texas court."

▇▇▇ The evidence in this case convinces us (as it did the trial court) that respondents and their predecessors in title had actually occupied the disputed strip continuously for twenty-five years prior to the institution of this action. Under the facts as found by the trial court and the rules laid down in the above cited cases we are satisfied that such occupancy had been open, hostile and exclusive and under claim of right made in good faith. Hence, the essential elements necessary to establish adverse possession on the part of respondents was sufficiently proven.

Appellants place their chief reliance on *Loomis v. Stromburg*, 166 Wash. 567, 7 P. (2d) 973, as presenting facts almost identical with the instant case. While the facts in the

cited case are similar to those involved here, there was no showing whatever that defendants in that case had had such possession of the disputed land for ten years next prior to commencement of the action as would result in the acquisition of title thereto by the defendants by reason of adverse possession. In the case at bar the findings of the trial court (which we adopt) clearly establish that respondents have had adverse occupancy of the disputed strip for more than the requisite period of ten years prior to the commencement of this action.

 The final assignment of error relates to the court's including in its order and judgment a legal description of the common boundary line between the lands of the parties. Appellants complain that there is no evidence in the record upon which this legal description could be based. The court, in its oral decision, stated that the easterly line of the hedge and the southerly prolongation thereof should mark the boundary line between them and suggested that appellants' witness Hitchings, an admittedly competent surveyor, run another line to establish the physical location thereof. In response to the court's suggestion, respondents' counsel stated:

"MR. WOLFSTONE: We would be agreeable to Mr. Hitchings preparing a legal description that would be filed under stipulation describing the line Your Honor has outlined to the eastern edge of the hedge or six inches over, and it would come out very close to what Mr. Hitchings describes as the south corner. I think the line Your Honor suggests would be the proper one, and I think we should have a metes and bounds description, otherwise reference could only be made to this decision."

Appellants' then counsel made no objection to the court's suggestion about using their surveyor's services to obtain the legal description, and later the order and judgment containing a legally described boundary line (presumably furnished by Mr. Hitchings) was entered by the court. No objection having been made by appellants to this procedure, either at the conclusion of the trial or at the time of the entry of the order and judgment, they cannot now be heard

to say that the trial court committed error in defining the boundary line in the manner described. The correctness of the legal description used by the court is not questioned by them.

Finding no error in the record, the order and judgment of the trial court is hereby affirmed.

SIMPSON, C. J., SCHWELLENBACH, GRADY, and HILL, JJ., concur.

[1]Reported in 214 P. (2d) 673.