[No. 371-41327-1. Division One. June 15, 1970.]
Panel 1

JOHN C. JONES *et al., Respondents,* v. FRANK SHATINA *et al., Appellants.*

*Jack Steinberg,* for appellants.

*Riddell, Williams, Voorhees, Ivie* and *Stephen E. De-Forest,* for respondents.

JAMES, C. J.—This action involves the title to 80 acres of raw land near Black Diamond valued at $96,000.

With the permission of the landowner, John C. Jones first began prospecting on the tract in the early 1930's. He and

his partner worked weekends, vacations, and days when they were laid off from their regular jobs as coal miners. His first partner in the project was killed by the cave-in of a shaft they had dug. Jones then took in Valentine Shatina as his partner. After Jones and Shatina had worked together for about 6 months, Davies, the landowner, told them they would have to buy the land if they wished to continue prospecting. Neither had enough money, so they decided to take in a more solvent third party, August W. Mattson.

The partners purchased the land from Davies for $1,080, which Mattson supplied. They agreed that Jones and Shatina were each to contribute $1,000 to equalize the partners' capital contributions. None of the understandings between the partners was in writing. The three men had been fellow miners, and Jones and Shatina had been friends for most of their adult lives.

The warranty deed from Davies, dated June 26, 1942, names Jones, Mattson, and Shatina as grantees.

All three men worked in their spare time to develop the property. They kept no books or records, but Jones and Mattson testified that Jones contributed his $1,000 by renting machinery and purchasing equipment and supplies. Both testified that Shatina contributed nothing but his labor and the use of his tools.

Shatina died on September 6, 1947. He had ceased working on the property about 6 months before his death. No merchantable coal had been found. Jones testified without objection that the property had a value of about $300 when Shatina died.

Shatina left no will. Thomas O. Hansen, the undertaker who arranged the funeral (and who thus became a creditor of the estate), was appointed to administer Shatina's estate. The attorney for the estate was H. I. Kyle, a longtime Enumclaw attorney. Both Hansen and Kyle were deceased at the time of trial.

Shatina's interests in the partnership and in the 80-acre

tract were not included in the inventory of the estate's assets.

Jones and Mattson attempted to sell the property in 1967. They were frustrated in their attempt because of the cloud created by Shatina's name on Davies' deed. By this action begun in February, 1968, Jones and Mattson seek a judgment quieting title in themselves as against any claim of Shatina's heirs. The heirs ask that they be adjudged owners of an undivided one-third interest in the property. The trial judge quieted title in Jones and Mattson free of any interest in the heirs of Shatina.

The conclusions of law demonstrate that the trial judge felt that several legal theories supported his ultimate conclusion that Jones and Mattson should prevail. They are waiver, statute of limitations, adverse possession, laches, and equitable estoppel.

The quiddity of partnership real property held in the name of individual partners as tenants in common has not been free from doubt. *See* 40 Am. Jur. *Partnership* § 110-112 (1942). The legal fiction indulged is that for some purposes partnership realty becomes personalty.[1] It is in writing the final chapter, dealing with death's dissolution of the partnership, that the courts have experienced difficulty in reconciling the fiction with the fact.

In *Hannegan v. Roth*, 12 Wash. 65, 70, 40 P. 636 (1895), the court held that surviving partners

> are not even entitled to the custody and control of the partnership property, as such property is here subject to administration by the "administrator of the partnership," and he is entitled to the exclusive custody thereof.

In 1895 (the year in which *Hannegan* was decided) the statutory provisions concerning the administration of partnership property did not differ materially from those which were in effect at the time of Shatina's death. At the time of

---

[1] The doctrine of equitable conversion when applied to partnership realty does not affect the statutory requirement that real property be conveyed by deed. *King v. Northern Pac. R.R.*, 27 Wn.2d 250, 177 P.2d 714, 171 A.L.R. 190 (1947).

Shatina's death, Laws of 1917, ch. 156, § 88, p. 664 provided that the administrator of the estate of a deceased partner was to include in a separate schedule in the inventory of the estate the whole of the property of such partnership. The statutes also provided that after inventory the partnership property should be in the custody and control of the administrator for the purposes of administration unless a surviving partner sought and was granted the right to administer the partnership estate. In *Hannegan,* as in this case surviving partners sought a decree quieting title to partnership realty in them. As was pointed out by Chief Justice Hoyt in his dissent upon rehearing, *Hannegan v. Roth,* 12 Wash. 695, 699, 44 P. 256 (1896), the majority seems to have ignored the rule in *Dyer v. Morse,* 10 Wash. 492, 39 P. 138 (1895), a case decided but 5 months earlier. The court in *Dyer* held that a surviving partner has a common law right to take possession of partnership property "as his own to reimburse himself for the moneys advanced by him in paying the debts of the firm, . . ." *Dyer v. Morse, supra* at 495. And if

> for that purpose he had paid out a sum in excess of the value of all [the partner's] property. . . . a court of equity will sustain his self-asserted title to the property, if at that time it would have been in his power to have conveyed the property to another for the purpose of paying such debts.

*Dyer v. Morse, supra* at 495.

The court further observed that the statutory provisions establishing the mechanics of dealing with partnership property after dissolution by death of a partner were to be construed as an aid to the common law.

> [I]t cannot be presumed that the legislature intended by its enactment to destroy the common law interest of a surviving partner which had theretofore existed. If such rights were cut off, in what capacity would the surviving partner hold, until such time as some one over whom he had no control should put the statute in motion? We are unable to think of any status under which he could so hold which would be at all satisfactory, or would not be

productive of gross injustice to the surviving partner. He could undoubtedly be compelled to pay the partnership debts, and, if he could make no use of the partnership property for that purpose, would have to pay them out of his own funds, and by the negligence or default of the representatives of the deceased partner might be kept from reimbursing himself for moneys thus advanced for an indefinite period. Such a result could not have been intended by the legislature, and the language used in its enactments must not be so construed as to effect it, unless it is the only construction possible.

*Dyer v. Morse, supra* at 496.

 By the time of Shatina's death, this state had adopted the Uniform Partnership Act, Laws of 1945, ch. 137 (now RCW Title 25), which in large degree statutorily confirms the court's earlier adherence to the common law concept of the nature of partnership property. The pertinent provisions of the Uniform Partnership Act, and those which we find to be determinative in this case are as follows:

Causes of dissolution. Dissolution is caused:

. . .

(4) By the death of any partner;

RCW 25.04.310.

Nature of a partner's right in specific partnership property.

. . .

(d) On the death of a partner, his right in specific partnership property vests in the surviving . . . partners, . . . Such surviving . . . partners, . . . [have] no right to possess the partnership property for any but a partnership purpose.

RCW 25.04.250(2)(d).

In 40 Am. Jur. *Partnership* § 110 (1942), the majority rule is stated to be,

In practically all jurisdictions such real estate is regarded in equity as personal property, at least to the extent that it may be necessary for the payment of the debts of the partnership and the adjustment of the equi-

ties of the partners, *including the reimbursement of individual partners who may have made advances to the firm*. The authorities concur in holding that firm real estate will not lose its character of personalty in being used not only in payment of the firm debts, *but in making a division of firm assets between the members on the dissolution of the partnership*, and that it will retain this character not only as between the partners themselves, but also as between the partners and their creditors, and also on the death of a partner *as between the survivors and the representatives of the deceased partner*.

(Footnotes omitted. Italics ours.)

We have found no Washington case which deals with the precise problem involved in this case.

Most of the evidence was produced by the testimony of Jones and Mattson. Jones' testimony was introduced by reading his pretrial deposition. The deposition was necessary because of Jones' failing health. Before the deposition was read, the heirs preserved their right to invoke the dead man's statute, RCW 5.60.030.

MR. STEINBERG: May I make one observation? As I indicated earlier, your Honor, we have no objection to the Court either reading it or hearing this, but I did want the Court to know that at this time I am objecting to some 95 percent of what the contents are, because in our view they are violative of the dead man's statute.

THE COURT: The objection is on the record.

MR. STEINBERG: Very well, your Honor.

THE COURT: The Court will allow the reading of the deposition on condition of a later determination as to whether or not it is applicable.

The heirs did not, however, similarly invoke the statute when Mattson testified. The testimony of Jones and Mattson was substantially the same. Our review of the entire record, however, satisfies us that the heirs waived the statute with respect to the testimony of both Jones and Mattson about their dealings with Shatina before he died. In fact, the heirs rely upon this evidence to support their claim to a one-third interest in the property.

Shatina's heirs assign error, however, to the trial judge's

refusal to apply the dead man's statute to exclude Jones' and Mattson's testimony concerning their dealings with Hansen and Kyle. Both Jones and Mattson testified about a meeting with Hansen, Kyle, and one of Shatina's heirs, Sophie Setina, a niece who came to Enumclaw from Chicago a few days after the funeral to inform herself about the condition of Shatina's estate. The substance of Jones' and Mattson's testimony is that they, the surviving partners, stated that the property was worth only about $300 and that Shatina was indebted to the partnership for more than $1,000. They testified that Miss Setina said she wanted no part of the property.

Jones testified that sometime later Hansen told him that the "property was settled" and that they (Jones and Mattson) could go back to work on it. Jones testified that shortly thereafter Kyle made a similar statement to him.

The trial judge made the following findings of fact.

The existence of the partnership arrangement between the plaintiffs and Valentine Shatina and the record title in said decedent was brought to the attention of the administrator for his estate, Thomas O. Hansen, the attorney for the estate, H. I. Kyle, and one of the heirs, Sophie Setina. Neither the real property above described, nor the decedent's partnership interest were included in the Inventory and Appraisement filed in said estate on December 10, 1947. or in the Final Report of the Administrator, or in the Inheritance Tax Return filed with the Tax Commission of the State of Washington. Said persons did not express any interest in the property or in seeking an accounting of the decedent's interest in the partnership, and disclaimed any obligation on the part of the decedent to pay his share of the partnership capital.

Finding of fact 10.

At the time of the probate of the Estate of Valentine Shatina, the net value of decedent's interest in the partnership was nil, as his obligation to the partnership offset the interest which he had in the partnership. Under these circumstances the act of the administrator, attorney and heir above named in disclaiming any interest in the partnership and/or in an accounting was reasonable and understandable.

Finding of fact 11.

Plaintiff John C. Jones was told by the administrator, Thomas O. Hansen, and by the attorney for the Estate of Valentine Shatina, H. I. Kyle, that the property was the plaintiffs and they could go ahead with their exploration for coal on the property. Over the years the plaintiffs have contributed $7,000 to $8,000, exclusive of labor performed by themselves, for the acquisition and development of the property. The plaintiffs gave up their mining activities approximately 7 to 8 years ago due to advancing age. No marketable coal was ever obtained from the property.

Finding of fact 12.

The dead man's statute provides,

[I]n an action . . . where the adverse party [the heirs in this case] . . . defends . . . as deriving . . . title . . . through or from any deceased person, . . . then a party in interest [Jones or Mattson] . . . shall not be admitted to testify in his own behalf as to any transaction . . . with, or any statement made to him, or in his presence, by . . . such deceased . . . person, . . .

RCW 5.60.030.

Whether the heirs qualify as an "adverse party" who "defends . . . as deriving . . . title . . . through" Hansen and Kyle is questionable. But we will assume without deciding that the dead man's statute bars any testimony of Jones and Mattson concerning any transaction with or statement made to them by or in the presence of Hansen or Kyle. Without this testimony, is there substantial evidence to support findings of fact 10, 11, and all but the first sentence of 12?

The testimony that Jones and Mattson met with Sophie Setina was admissible. The heirs correctly assert that so far as the record discloses Sophie Setina was not authorized to speak for any of the other heirs. But she is a party, and she could speak for herself. And as a matter of fact, she did testify by way of an answer to an interrogatory stating that the meeting never took place. The trial judge, after advis-

ing counsel for the heirs that he considered the evidence of the post-funeral meeting to be significant, offered a continuance to enable Miss Setina to testify at the trial. The heirs declined the offer.

Without the testimony of Jones and Mattson involving Hansen and Kyle, the only cognizable evidence is this:

(1) An heir of Shatina's came to Enumclaw from Chicago shortly after the funeral to inform herself about the condition of the estate.

(2) She met with the surviving partners, who told her the history of the partnership and stated to her that the partnership real property was worth only $300 and that Shatina owed the partnership in excess of $1,000. She stated that she wanted no part of the property.

(3) She met with Hansen, the administrator of the estate, and with Kyle, the attorney for the estate.

(4) The inventory thereafter filed in the estate included neither Shatina's interest in the partnership nor in the real property.

(5) The surviving partners continued to work upon the land and treated it as their own. They expended substantial sums for taxes and in an effort to find coal.

(6) No claim was ever asserted by any heir until this action was begun about 20 years after Shatina's death.

We find this to be substantial evidence to support the trial judge's findings. A finding that the failure to inventory either the partnership interest or the undivided interest in the real property was a deliberate act reflecting an agreement between the administrator and the surviving partners to settle Shatina's partnership account is a reasonable inference from the cognizable facts.

Title to the land vested, for partnership purposes, in Jones and Mattson upon Shatina's death. RCW 25.04.250. The settlement by which the partners gave up their claim against the estate for Shatina's unpaid capital contribution in exchange for the estate's disclaimer of any interest in the land was a legitimate winding up of the partnership affairs—a partnership purpose.

This conclusion makes it unnecessary to consider the remaining issues in the case.

The judgment is affirmed.

FARRIS and SWANSON, JJ., concur.